# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **TERESA MORANGELLO HUNLEY,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:13cv00052 |
| | ) | **MEMORANDUM OPINION** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

## *I. Background and Standard of Review*

Plaintiff, Teresa Morangello Hunley, ("Hunley"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the

Case 2:13-cv-00052-PMS   Document 24   Filed 03/13/15   Page 1 of 26   Pageid#: 948

case before a jury, then there is "substantial evidence.'"" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Hunley protectively filed her application[1] for SSI on February 26, 2009, alleging disability as of January 21, 2009,[2] due to hearing loss, unsteady balance, back and knee problems, migraine headaches, depression and anxiety. (Record, ("R."), at 279-81, 293, 297, 323.) The claim was denied initially and on reconsideration. (R. at 199-201, 205-07, 210-11, 213-15, 217-19.) Hunley then requested a hearing before an administrative law judge, ("ALJ"). (R. at 220-21.) The hearing was held on September 29, 2011, at which Hunley was represented by counsel. (R. at 129-68.)

By decision dated October 20, 2011, the ALJ denied Hunley's claim. (R. at 112-22.) The ALJ found that Hunley had not engaged in substantial gainful activity since February 26, 2009, the date of her application. (R. at 115.) The ALJ determined that the medical evidence established that Hunley suffered from severe impairments, including recurrent subluxation/dislocation of the patella status-post arthroscopy, sensory/conductive and sensorineural hearing loss, asthma, mild degenerative disc disease of the lumbar spine, depression, anxiety and headaches,

_____

[1] Because Hunley filed a prior application for SSI on February 12, 2007, which was denied by decision dated January 22, 2009, (R. at 112), and which Hunley pursued no further, this prior decision is *res judicata*. That being the case, the question before the court is whether Hunley was disabled at any time between January 23, 2009, the day following the date of the prior denial, and October 20, 2011, the date of the current ALJ's denial. I note that any medical evidence included in this Memorandum Opinion not directly relevant to this time period is included for clarity of the record only.

[2] Although Hunley listed February 1, 2007, as her alleged onset date in her application for SSI, she confirmed at her hearing that her alleged onset date was actually January 21, 2009. (R. at 133, 279.)

but she found that Hunley did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 115-16.) The ALJ found that Hunley had the residual functional capacity to perform simple, routine, repetitive light work[3] that did not require more than limited pushing/pulling with the lower extremities, that did not require crawling, climbing ladders, ropes or scaffolds, working on vibrating surfaces, at unprotected heights, near hazardous machinery, exposure to excessively loud background noise or interaction with the general public and that did not require more than occasional balancing, stooping, kneeling, crouching or climbing of ramps and stairs. (R. at 116-17.) The ALJ found that Hunley was unable to perform her past relevant work. (R. at 121.) Based on Hunley's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that Hunley could perform other jobs existing in significant numbers in the national economy, including jobs as a merchandise marker, a laundry worker and a housekeeper. (R. at 121-22.) Therefore, the ALJ found that Hunley was not under a disability as defined under the Act and was not eligible for benefits. (R. at 122.) *See* 20 C.F.R. § 416.920(g) (2014).

After the ALJ issued her decision, Hunley pursued her administrative appeals, but the Appeals Council denied her request for review. (R. at 1-5.) Hunley then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2014). The case is before this court on Hunley's motion for summary judgment filed May 7, 2014, and the Commissioner's motion for summary judgment filed July 14, 2014.

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 416.967(b) (2014).

*II. Facts*

Hunley was born in 1967, (R. at 137, 279), which classifies her as a "younger person" under 20 C.F.R. § 416.963(c). Hunley has two years of college with certification as a paralegal, and she has vocational training in data processing. (R. at 137-38, 303.) Hunley has past work as a fast food worker. (R. at 157, 298.) Hunley testified that she experienced three panic attacks a week. (R. at 144.) She stated that she could stand and/or sit for up to 15 minutes without interruption. (R. at 149.) Hunley stated that she could lift items weighing up to 10 pounds. (R. at 149-50.) She stated that she could walk 100 yards without interruption. (R. at 150.)

Mark Heileman, a vocational expert, also was present and testified at Hunley's hearing. (R. at 156-64.) Heileman was asked to consider an individual who had the residual functional capacity to perform simple, routine, repetitive light work that required no more than occasional climbing of ramps and stairs; balancing; kneeling; stooping; and crouching, that did not require crawling or working around concentrated exposure to extreme temperatures; excess humidity; pollutants; irritants; hazardous machinery; unprotected heights; vibrating surfaces; or excessively loud background noises, and that did not require climbing ladders, ropes or scaffolds or interacting with the general public. (R. at 157-58.) Heileman stated that such an individual could not perform Hunley's past relevant work. (R. at 158.) Heileman was asked if other work existed that an individual of Hunley's age, education and past work experience, who was limited as indicated in the previous hypothetical, could perform. (R. at 158.) He stated that there was a significant number of jobs that existed that such an individual could perform, including jobs as a merchandise marker, a housekeeping cleaner and a laundry worker. (R. at

158.) Heileman was asked to consider a hypothetical individual who was limited as indicated by the assessment dated September 20, 2011, completed by Dr. Nazia I. Shehzad, M.D. (R. at 159, 864-66.) He stated that there would be no jobs available that such an individual could perform. (R. at 159-60.) Heileman was asked to consider a hypothetical individual with the limitations indicated by the assessments dated November 30, 2009, and July 23, 2011, completed by Robert S. Spangler, Ed.D., a licensed psychologist. (R. at 160, 729-31, 853-55.) He stated that there would be no jobs available that such an individual could perform. (R. at 160-62.) Heileman was asked to consider a hypothetical individual with the limitations indicated by the assessment dated March 27, 2009, completed by Dr. Uzma Ehtesham, M.D. (R. at 162-63, 669-71.) He stated that there would be no jobs available that such an individual could perform. (R. at 163.) Heileman was then asked to consider a hypothetical individual with the limitations indicated by the assessment of Dr. Jill Couch, D.O., dated June 7, 2007.[4] (R. at 163-64, 473-74.) He stated that there would be no jobs available that such an individual could perform. (R. at 164.)

In rendering her decision, the ALJ reviewed records from Lee County Schools; Sabrina Mitchell, F.N.P., a family nurse practitioner; Dr. J. William Boyle, III, M.D.; Indian Path Medical Center; Wellmont Rehabilitation Services; Dr. Nazia I. Shehzad, M.D.; Howard S. Leizer, Ph.D., a state agency psychologist; Dr. Robert McGuffin, M.D., a state agency physician; Julie Jennings, Ph.D., a state

---

[4] Dr. Couch completed this medical evaluation for Lee County Department of Social Services. (R. at 473-74.) Dr. Couch reported that Hunley was unable to work and would be incapacitated for 60 to 90 days. (R. at 473.) She opined that Hunley could lift items weighing up to five pounds and that she was limited in her ability to bend over, stoop down, reach for objects; manual dexterity activities; hearing; sitting and/or standing for greater than one hour at a time; walking distances greater than 50 feet; and climbing four to six steps. (R. at 474.)

agency psychologist; Dr. Michael Hartman, M.D., a state agency physician; Norton Community Hospital; Dr. S. C. Kotay, M.D.; Sullivan Digestive Center; Dr. L. Del Bailey, M.D.; Pikeville Neurology Clinic & Diagnostic Center; Dr. Laurent J. Legault, M.D.; Dr. Sai P. Gutti, M.D.; Robert S. Spangler, Ed.D., a licensed psychologist; Dr. Uzma Ehtesham, M.D.; Holston Valley Medical Center; Dr. Jeffrey T. Hunt, M.D.; Stone Mountain Health Services; University of Virginia Health Services; Lonesome Pine Hospital; Lee Regional Medical Center; ETSU Family Physicians of Kingsport; Frontier Health; and State of Tennessee Department of Mental Health and Developmental Disabilities. Hunley's attorney submitted additional medical records from Dr. Shehzad to the Appeals Council.[5]

Hunley was treated by Dr. Sai P. Gutti, M.D., a pain specialist, from July 2007 through December 2009 for lower back pain. (R. at 446-48, 517-20, 688-98, 701-11, 713-19.) Dr. Gutti diagnosed low back pain, lower extremity radiculitis and bilateral sacroiliitis. (R. at 688-93, 702.) On April 7, 2009, an MRI of Hunley's lumbar spine was normal. (R. at 697-98.) Hunley underwent bilateral sacroiliac joint injections in July and October 2009, and he reported a good response. (R. at 701, 713, 715, 718.) On October 27, 2009, Hunley reported that her residual pain was tolerable with medication, and her activities of daily living had improved. (R. at 714.)

Hunley treated with Dr. Uzma Ehtesham, M.D., for depression and anxiety from October 23, 2007, through February 1, 2010. (R. at 521-22, 672-84, 746-55.) On October 30, 2007, Dr. Ehtesham noted that Hunley was depressed and anxious,

---

[5] Since the Appeals Council considered and incorporated this additional evidence into the record in reaching its decision, (R. at 1-5), this court must also take these new findings into account when determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

but her appearance was normal, her thought process linear, and her thought content was unremarkable. (R. at 521.) Hunley reported that her symptoms of depression improved on medications. (R. at 521.) On November 13, 2008, Hunley reported that her symptoms of depression had worsened. (R. at 647.) Dr. Ehtesham diagnosed major depressive disorder and generalized anxiety disorder. (R. at 652.) Dr. Ehtesham assessed Hunley's then-current Global Assessment of Functioning, ("GAF"),[6] score at 60.[7] (R. at 652.) On December 2, 2008, Hunley reported that she was doing fairly well, stating that her mood swings and anger were less. (R. at 645-46.) Dr. Ehtesham assessed Hunley's anxiety and depression on a scale of one to 10 and concluded that her anxiety ranked at level three, and her depression ranked at six. (R. at 645.) Dr. Ehtesham noted that Hunley was anxious and displayed fair insight and intact judgment. (R. at 645.)

On March 27, 2009, Dr. Ehtesham completed a mental assessment indicating that Hunley had an unsatisfactory ability to understand and remember simple instructions and to interact appropriately with the public and supervisors. (R. at 669-71.) Dr. Ehtesham indicated that Hunley had no useful ability to carry out simple instructions, to make judgments on simple work-related decisions, to understand, remember and carry out complex instructions, to make judgments on complex work-related decisions, to interact appropriately with co-workers and to respond appropriately to usual work situations and to changes in routine work

---

[6] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[7] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms … OR moderate difficulty in social, occupational, or school functioning…." DSM-IV at 32.

settings. (R. at 669-70.) Dr. Ehtesham reported that Hunley was permanently disabled. (R. at 671.)

On May 1, 2009, Dr. Ehtesham completed a Mental Status Evaluation Form indicating that Hunley's depression had worsened and, as a result, her relationships with family and friends had decreased. (R. at 672-76.) Hunley's mood was noted as sad, her memory had decreased, and she experienced hallucinations when under stress. (R. at 673.) Hunley had decreased concentration, and her judgment and fund of knowledge were deemed fair. (R. at 674.) Dr. Ehtesham opined that Hunley was unstable when under stress. (R. at 674.) On December 31, 2009, Dr. Ehtesham completed a medical evaluation for Lee County Department of Social Services indicating that Hunley was unable to participate in employment and training activities in any capacity as a result of her anger problems, and the expected duration of incapacity was 90 days. (R. at 733-34.) Dr. Ehtesham diagnosed major depressive disorder, single episode, severe, without psychotic behavior; and generalized anxiety disorder. (R. at 734.) It also was noted that Hunley's condition hindered her ability to care for her children. (R. at 734.) Also, on December 31, 2009, Hunley reported that her anger and depression were less, and her sleep was improving. (R. at 748.) Dr. Ehtesham rated Hunley's anxiety level at three out of 10. (R. at 746.) Hunley's insight was fair, and her judgment intact. (R. at 748.) On February 1, 2010, Hunley reported that her depression was improving, and her anxiety was lessening. (R. at 746.)

Dr. Ehtesham completed a mental assessment indicating that Hunley was seriously limited in her ability to understand, remember and carry out simple instructions and to interact appropriately with the public. (R. at 803-05.) Dr.

-8-

Ehtesham reported that Hunley had no useful ability to make judgments on simple work-related decisions, to understand, remember and carry out complex instructions, to make judgments on complex work-related decisions, to interact appropriately with supervisors and co-workers and to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 803-04.) Dr. Ehtesham opined that Hunley was permanently disabled. (R. at 805.)

On February 19, 2009, Hunley presented to the emergency room at Lee Regional Medical Center complaining of right shoulder and neck pain after falling in a hole on her driveway. (R. at 622-28.) X-rays of Hunley's cervical spine showed mild spondylosis. (R. at 623-24.) X-rays of Hunley's thoracic spine showed mild scoliosis and small osteophytes at multiple levels. (R. at 624.) X-rays of Hunley's right shoulder were normal. (R. at 624.) She was diagnosed with cervical strain and right should pain. (R. at 628.)

On August 10, 2009, Dr. Robert McGuffin, M.D., a state agency physician, reported that Hunley had the residual functional capacity to perform light work. (R. at 175-77.) Dr. McGuffin reported that Hunley could occasionally climb ramps and stairs, stoop and crouch, frequently balance and never climb ladders, ropes or scaffolds, kneel and crawl. (R. at 176.) No manipulative or visual limitations were noted. (R. at 176.) Dr. McGuffin noted that Hunley had hearing loss in her left ear. (R. at 176.) He also indicated that Hunley should avoid concentrated exposure to work hazards, such as machinery and heights. (R. at 176.)

On August 11, 2009, Howard S. Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Hunley

suffered from an affective disorder and anxiety-related disorder that mildly restricted her activities of daily living. (R. at 173-74.) Leizer reported that Hunley had mild difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 174.) He further reported that Hunley had not experienced repeated episodes of decompensation of extended duration. (R. at 174.) Leizer reported that the medical evidence of record did not document the presence of a severe mental impairment. (R. at 174.)

On November 30, 2009,[8] Robert S. Spangler, Ed.D., a licensed psychologist, evaluated Hunley at the request of Hunley's attorney. (R. at 722-28.) Hunley reported that she did not hold a valid driver's license because it was suspended due to her medical condition. (R. at 722.) The Wechsler Adult Intelligence Scale - Fourth Edition, ("WAIS-IV"), was administered, and Hunley obtained a full-scale IQ score of 79. (R. at 726.) Spangler noted a six point drop in Hunley's full-scale IQ scores from the 2006 scores, which reflected eroding concentration. (R. at 726.) Spangler diagnosed recurrent, moderate to severe major depressive disorder; moderate to severe generalized anxiety disorder; moderate to severe panic disorder without agoraphobia; borderline intelligence; erratic concentration; and slow pace. (R. at 726.) He assessed Hunley's then-current GAF score at 50[9] to 55. (R. at 727.) Spangler reported that he agreed with Dr. Ehtesham, in that Hunley was disabled due to the combination of her mental impairments. (R. at 727.)

---

[8] Spangler performed a prior evaluation on November 1, 2006. (R. at 393-99, 725.) At that time, the Wechsler Adult Intelligence Scale - Third Edition, ("WAIS-III"), was administered, and Hunley obtained a verbal IQ score of 86, a performance IQ score of 85 and a full-scale IQ score of 85. (R. at 396, 725.) Spangler diagnosed a mild to moderate depressive disorder, not otherwise specified; low average intelligence; mild to moderate erratic concentration; and slow pace. (R. at 397, 725.)

[9] A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning...." *See* DSM-IV at 32.

Spangler completed a mental assessment indicating that Hunley had a seriously limited ability to follow work rules, to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to function independently, to maintain attention/concentration, to understand, remember and carry out simple job instructions, to maintain personal appearance, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 729-31.) He found that Hunley had no useful ability to deal with work stress, to understand, remember and carry out complex and detailed instructions and to demonstrate reliability. (R. at 729-30.) Spangler reported that Hunley would be absent from work more than two days a month. (R. at 731.)

On July 23, 2011, Spangler evaluated Hunley for a third time at the request of Hunley's attorney. (R. at 857-61.) Spangler diagnosed moderate to severe recurrent major depressive disorder; moderate generalized anxiety disorder; moderate panic disorder without agoraphobia; moderate erratic concentration; and slow paced. (R. at 860-61.) He assessed her then-current GAF score at 50 to 55. (R. at 861.)

Also on July 23, 2011, Spangler completed a mental assessment indicating that Hunley had a seriously limited ability to follow work rules, to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to function independently, to maintain attention/concentration, to understand, remember and carry out simple instructions, to maintain personal appearance, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 853-55.) He indicated that Hunley had no useful ability to deal

with work stress, to understand, remember and carry out complex and detailed instructions and to demonstrate reliability. (R. at 853-54.) Spangler reported that Hunley would be absent from work more than two days a month as a result of her mental impairments. (R. at 855.)

On January 18, 2010, Hunley presented to the emergency room at Holston Valley Medical Center for complaints of low back pain. (R. at 737.) X-rays of Hunley's lumbar spine showed mild degenerative disc disease at the L3-L4 and L4-L5 levels. (R. at 738.) She was diagnosed with acute lower back pain and sprain. (R. at 737.)

On January 21, 2010, Hunley presented to the emergency room at Indian Path Medical Center for complaints of headaches and back pain. (R. at 767-72.) A CT scan of Hunley's head was normal. (R. at 771.) She was diagnosed with acute lumbago and headache. (R. at 768.) Hunley was seen again at the emergency room on April 22, 2010, for complaints of suicidal and homicidal ideations.[10] (R. at 763-66.) A crisis intervention and consultation was performed by Frontier Health. (R. at 781-93.) Hunley threatened suicide and to kill her husband. (R. at 782.) It was noted that, while Hunley reported no hearing in her left ear and decreased hearing in her right ear, she had no problem responding to questions. (R. at 782.) Hunley reported hearing mumbling voices and music. (R. at 789.) Hunley reported seeing things moving on the ceiling and the floor floating. (R. at 789.) It was determined that Hunley met the criteria for involuntary commitment. (R. at 790.)

---

[10] The record shows that Hunley was admitted for psychiatric treatment in 2007 and 2008 at Ridgeview Psychiatric Hospital and Southwest Virginia Mental Health Institute. (R. at 405-45, 774, 794-97.) In 2007, Hunley threatened to kill her ex-husband. (R. at 774.)

-12-

Hunley was admitted to Lakeshore Mental Health Institute on April 23, 2010. (R. at 774-78.) Hunley reported that she had been off of her medications for a couple of months after she lost her Medicaid. (R. at 774.) She denied auditory or visual hallucinations and paranoia. (R. at 776.) Hunley's long- and short-term memory was intact. (R. at 776.) Her attention and concentration were appropriate, and she had fair insight and judgment. (R. at 776.) Hunley's admitting diagnosis was recurrent major depression with psychosis. (R. at 777.) Her GAF score upon admission was assessed at 28.[11] (R. at 777.) She was discharged on April 26, 2010, with a diagnosis of nondependent opioid abuse, and her then-current GAF score was assessed at 61.[12] (R. at 774, 777.)

On March 31, 2010, Julie Jennings, Ph.D., a state agency psychologist, completed a PRTF indicating that Hunley suffered from an affective disorder and anxiety-related disorder that mildly restricted her activities of daily living. (R. at 185-86.) Jennings reported that Hunley had mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. (R. at 186.) She further reported that Hunley had not experienced repeated episodes of decompensation of extended duration. (R. at 186.)

Jennings completed a mental assessment indicating that Hunley was moderately limited in her ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to

---

[11] A GAF score of 21-30 indicates that the individual's "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment … OR inability to function in almost all areas…." DSM-IV at 32.

[12] A GAF score of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well ...." DSM-IV at 32.

complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the public and to respond appropriately to changes in the work setting. (R. at 189-91.) Jennings noted that Hunley would be limited to performing simple, unskilled, nonstressful work. (R. at 191.)

On March 31, 2010, Dr. Michael Hartman, M.D., a state agency physician, reported that Hunley had the residual functional capacity to perform light work. (R. at 188-89.) Dr. Hartman reported that Hunley could occasionally climb ramps and stairs, stoop and crouch, frequently balance and never climb ladders, ropes or scaffolds, kneel and crawl. (R. at 188.) No manipulative or visual limitations were noted. (R. at 188-89.) Dr. Hartman noted that Hunley had hearing loss in her left ear. (R. at 189.) He also indicated that Hunley should avoid concentrated exposure to work hazards, such as machinery and heights. (R. at 189.)

On May 26, 2010, Hunley began treating with Dr. Nazia I. Shehzad, M.D., for depression, anxiety and asthma. (R. at 848-49.) Hunley reported that her medications were helping to prevent headaches and were controlling her symptoms of depression. (R. at 848.) On June 23, 2010, Hunley complained of back pain from a fall she sustained while coming down steps. (R. at 846.) She also reported a back injury that she sustained when she fell in her bathtub two weeks prior. (R. at 846.) Hunley did not indicate any problems with her depression or anxiety. (R. at 846.) On October 4, 2010, Hunley sought treatment for low back pain. (R. at 844-45.) Dr. Shehzad continued Hunley's treatment, which included injections of Toradol and Norflex and prescriptions for Naprosyn and Cyclobenzaprine. (R. at

-14-

845.) Hunley reported that the injections helped her back pain. (R. at 844.) On October 28, 2010, Hunley was seen for depression and to have Dr. Shehzad "fill out forms." (R. at 842.) Dr. Shehzad noted that Hunley was pleasant, alert and oriented. (R. at 842.) She had normal eye contact and adequate grooming. (R. at 842.) On January 4, 2011, Hunley reported that her depression was improving. (R. at 839.) On June 9, 2011, Hunley complained of low back pain and not being able to move her right leg. (R. at 831.) She had lumbar tenderness and muscle spasm and limited range of motion, secondary to pain. (R. at 831.) Dr. Shehzad diagnosed low back pain and paresthesias from right hip to posterior leg to heel. (R. at 831-32.) On July 11, 2011, Hunley reported that her medications significantly helped her depression. (R. at 829-30.)

Also on July 11, 2011, Dr. Shehzad completed a medical assessment indicating that Hunley could occasionally lift and carry items weighing up to 20 pounds, and she could frequently lift and carry items weighing up to five pounds. (R. at 870-72.) She opined that Hunley could stand, walk and/or sit for up to two hours and that she could do so for up to 30 minutes without interruption. (R. at 870-71.) Dr. Shehzad opined that Hunley could frequently climb, stoop, kneel, crouch and crawl and occasionally balance. (R. at 871.) She found that Hunley's abilities to reach, to handle, to feel, to push/pull, to see, to hear and to speak were affected by her impairments. (R. at 871.) Hunley was restricted from working around heights, moving machinery, noise and vibration. (R. at 872.) Dr. Shehzad opined that Hunley would be absent from work more than two days a month. (R. at 872.)

-15-

That same day, Dr. Shehzad completed a mental assessment indicating that Hunley had a limited, but satisfactory, ability to maintain personal appearance and to behave in an emotionally stable manner. (R. at 873-75.) She opined that Hunley had a seriously limited ability to follow work rules, to relate to co-workers, to use judgment, to function independently, to understand, remember and carry out simple instructions, to relate predictably in social situations and to demonstrate reliability. (R. at 873-74.) Dr. Shehzad opined that Hunley had no useful ability to deal with the public, to interact with supervisors, to deal with work stresses, to maintain attention/concentration and to understand, remember and carry out complex and detailed instructions. (R. at 873-74.) Dr. Shehzad opined that Hunley would be absent from work more than two days a month. (R. at 875.)

On September 20, 2011, Dr. Shehzad completed another medical assessment indicating that Hunley could occasionally lift and carry items weighing up to 10 pounds, and she could frequently lift and carry items weighing up to five pounds. (R. at 864-66.) She opined that Hunley could stand and/or walk for up to one hour and that she could do so for up to 15 to 30 minutes without interruption. (R. at 864.) She found that Hunley could sit for up to one hour and that she could do so for up to 30 minutes without interruption. (R. at 865.) Dr. Shehzad opined that Hunley could frequently climb, stoop, kneel, balance, crouch and crawl. (R. at 865.) She found that Hunley's abilities to reach, to handle, to feel, to push/pull, to see, to hear and to speak were affected by her impairments. (R. at 865.) Hunley was restricted from working around heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity and vibration. (R. at 866.) Dr. Shehzad opined that Hunley would be absent from work more than two days a month. (R. at 866.)

-16-

On September 21, 2011, Dr. Shehzad completed a mental assessment indicating that Hunley had a limited, but satisfactory, ability to maintain personal appearance. (R. at 867-69.) She opined that Hunley had a seriously limited ability to follow work rules, to relate to co-workers, to use judgment, to interact with supervisors, to understand, remember and carry out detailed and simple instructions, to behave in an emotionally stable manner and to demonstrate reliability. (R. at 867-68.) Dr. Shehzad opined that Hunley had no useful ability to deal with the public, to deal with work stresses, to function independently, to maintain attention/concentration, to understand, remember and carry out complex instructions and to relate predictably in social situations. (R. at 867-68.) Dr. Shehzad opined that Hunley would be absent from work more than two days a month. (R. at 869.)

On November 28, 2011, Hunley complained of dizziness and neck pain. (R. at 103-04.) She reported that her depression was doing well on medication. (R. at 103.) Hunley denied symptoms of depression and anxiety. (R. at 103.) Dr. Shehzad noted tenderness in Hunley's lower cervical spine, muscle spasm bilaterally and normal range of motion in her neck. (R. at 104.) On January 6, 2012, Dr. Shehzad completed a medical evaluation for the Lee County Department of Services indicating that Hunley was unable to participate in employment and training activities due to headaches, asthma, depression, anxiety and hearing loss. (R. at 101-02.) Dr. Shehzad indicated that Hunley's limitations would last six months. (R. at 101.) Dr. Shehzad recommended that Hunley apply for SSI. (R. at 102.)

On June 25, 2012, Hunley was evaluated at Wellmont Rehabilitation Services for her complaints of low back pain. (R. at 72-75.) Hunley had increased lumbar lordosis and slumped posture with protracted shoulders. (R. at 73.) She had a normal gait and pain with range of motion testing. (R. at 73.) It was noted that Hunley would benefit from physical therapy for strengthening, flexibility and pain management. (R. at 73.) On June 28, 2012, Hunley reported that her pain was "a little less" as compared to the previous session. (R. at 76.) On July 2, 2012, Hunley reported that she felt "pretty good." (R. at 77.) On July 9, 2012, Hunley reported increased pain. (R. at 78.) She reported a decrease in pain on July 12, 2012. (R. at 79.) On July 16, 2012, Hunley reported low back pain after having her two-year-old grandson over the weekend. (R. at 80.) On July 23, 2012, Hunley reported that she felt the same as she did since beginning physical therapy. (R. at 81.) She continued to complain of pain at her sessions on July 26, 2012, and July 30, 2012. (R. at 82-83.)

On January 21, 2013, Dr. Fredia Helbert, Au.D., conducted hearing tests, which indicated that Hunley suffered from a significant hearing loss. (R. at 22-23.)

Hunley was treated by Sabrina Mitchell, F.N.P., a family nurse practitioner, from May 2012 through December 2012 for complaints of lower back pain, panic attacks, migraine headaches and gastroesophageal reflux disease, ("GERD"). (R. at 35-36, 70, 84-96.) An x-ray of Hunley's lumbar spine taken on May 13, 2012, showed mild disc space narrowing at the L5-S1 level. (R. at 84.) On May 30, 2012, Mitchell completed a medical evaluation for Lee County Department of Social Services indicating that Hunley was unable to participate in employment and training activities in any capacity as a result of low back pain with muscle spasms

and migraine headaches, and the expected duration of incapacity was three months. (R. at 92-93.) On August 15, 2012, Mitchell completed a medical evaluation for Lee County Department of Social Services indicating that Hunley was unable to participate in employment and training activities in any capacity as a result of degenerative disc disease with right lower extremity radiculopathy and depression with anxiety, and the expected duration of incapacity was six months. (R. at 88-89.) On August 20, 2012, an MRI of Hunley's lumbar spine was normal. (R. at 70.) On December 7, 2012, Hunley reported that her mood was controlled with medications, her panic attacks were less frequent, and her migraine headaches were controlled with medication. (R. at 35.)

On March 12, 2013, Mitchell completed an assessment indicating that Hunley could occasionally lift and carry items weighing up to 10 pounds and frequently lift and carry items weighing up to five pounds. (R. at 29-31.) She noted that Hunley could stand and/or walk a total of one hour in an eight-hour workday and that she could do so for up to 30 minutes without interruption. (R. at 29.) Mitchell reported that Hunley's ability to sit was affected by her impairment. (R. at 30.) She found that Hunley could occasionally stoop, kneel, balance and crawl, but never climb or crouch. (R. at 30.) Mitchell found that Hunley's abilities to reach, to handle, to feel, to push/ pull and to hear were affected by her impairments. (R. at 30.) Mitchell found that Hunley was restricted from working around heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity and vibration. (R. at 31.) She also reported that Hunley would be absent from work more than two days a month due to her impairments. (R. at 31.)

-19-

That same day, Mitchell completed a mental assessment indicating that Hunley had a limited, but satisfactory, ability to maintain personal appearance and to behave in an emotionally stable manner. (R. at 32-34.) She found that Hunley had a seriously limited ability to follow work rules, to relate to co-workers, to use judgment, to function independently, to understand, remember and carry out simple job instructions, to relate predictably in social situations and to demonstrate reliability. (R. at 32-33.) Mitchell reported that Hunley had no useful ability to deal with the public, to interact with supervisors, to deal with work stresses, to maintain attention/concentration and to understand, remember and carry out complex and detailed instructions. (R. at 32-33.) She also reported that Hunley would be absent from work more than two days a month due to her impairments. (R. at 34.)

On April 8, 2013, Hunley saw Dr. Carl W. Slocum, M.D., for hearing loss. (R. at 17-18.) Dr. Slocum described Hunley's mood and affect as pleasant and appropriate. (R. at 17.) Testing showed bilateral conductive hearing loss. (R. at 18-19.) On June 4, 2013, Hunley underwent removal of the stapes from her left inner ear. (R. at 7-8.) On June 14, 2013, Hunley's packing was removed and she had no complaints. (R. at 15.)

## III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2014); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a

listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2014).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2014); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Hunley argues that the ALJ improperly determined her residual functional capacity. (Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-7.) In particular, Hunley argues that the ALJ erred by failing to adhere to the treating physician rule and accord controlling weight to the opinions of Dr. Shehzad and Dr. Ehtesham. (Plaintiff's Brief at 7-9.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether

substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(c), if she sufficiently explains her rationale and if the record supports her findings.

Hunley argues that the ALJ improperly determined her residual functional capacity. (Plaintiff's Brief at 5-7.) The ALJ found that Hunley had the residual functional capacity to perform simple, routine, repetitive light work that did not require more than limited pushing/pulling with the lower extremities, that did not require crawling, climbing ladders, ropes or scaffolds, working on vibrating surfaces, at unprotected heights, near hazardous machinery, exposure to excessively loud background noise or interaction with the general public and that did not require more than occasional balancing, stooping, kneeling, crouching or climbing of ramps and stairs. (R. at 116-17.)

Hunley also argues that the ALJ erred by failing to adhere to the treating physician rule and accord controlling weight to the opinions of Dr. Shehzad and Dr. Ehtesham. (Plaintiff's Brief at 7-9.) After a complete review of the evidence of record, I find Hunley's arguments unpersuasive. The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof of disability cases. *See McLain*, 715 F.2d at 869. The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 416.927(c)(2) (2014). However, "[c]ircuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

Based on my review of the record, I find that substantial evidence exists to support the ALJ's decision to not give controlling weight to the opinions of Dr. Ehtesham and Dr. Shehzad, which, essentially found Hunley unable to mentally or physically function. The ALJ noted that she was giving little weight to the opinions of Dr. Shehzad's September 2011 physical assessment because it was not supported by the objective medical evidence of record. (R. at 120.) Dr. Shehzad's treatment notes show that Hunley's straight leg raising tests were negative bilaterally, and she had an unremarkable gait. (R. at 829-30, 835.) In May 2010, Dr. Shehzad found that Hunley's physical examination was normal. (R. at 848.) As noted above, Hunley reported that she received a good response to injection

therapy and that her pain was tolerable with medication. (R. at 713-14, 718.) Hunley's MRIs of the lumbar spine were normal. (R. at 70, 697-98.) X-rays of Hunley's cervical spine showed mild spondylosis. (R. at 623-24.) X-rays of Hunley's thoracic spine showed mild scoliosis and small osteophytes at multiple levels. (R. at 624.) In January 2010, x-rays of Hunley's lumbar spine showed mild degenerative disc disease at the L3-L4 and L4-L5 levels. (R. at 738.) In May 2012, x-rays of Hunley's lumbar spine showed mild disc space narrowing at the L5-S1 level. (R. at 84.) In addition, the state agency physicians opined that Hunley could perform light work with postural limitations. (R. at 175-77, 188-89.)

The ALJ also noted that she considered the mental assessments of Dr. Ehtesham, Spangler and Dr. Shehzad, and found that their limitations were not supported by the "fairly innocuous clinical findings" pertaining to Hunley's mental status. (R. at 120-21.) She noted that Hunley received conservative mental health treatment and consistently had GAF ratings above 60. (R. at 121.) There is no indication that Hunley indicated to Dr. Shehzad that her depression was worsening or debilitating. In fact, the record contains numerous references to Hunley telling Dr. Shehzad she was doing fine, and her depression was improving on medication. Hunley reported on numerous occasions that her anger and depression were less and that her sleep was improving. (R. at 645-46, 746, 748.) Dr. Ehtesham reported that Hunley's anxiety level rated a three on a scale of one to 10. (R. at 748.) In addition, Hunley reported to Dr. Ehtesham, Dr. Shehzad and nurse practitioner Mitchell that her symptoms of depression improved with medication. (R. at 35, 103, 521, 746, 829-30, 848, 864-69, 873-75.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986).

While the record shows that Hunley was admitted in April 2010 for suicidal and homicidal ideations, it was noted that she had been off of her medications for a couple of months. (R. at 774.) It was noted that Hunley's long- and short-term memory was intact. (R. at 776.) She had appropriate attention and concentration, and her insight and judgment were deemed fair. (R. at 776.) Upon discharge, her GAF score was assessed at 61, indicating that Hunley was generally functioning pretty well and experienced only mild difficulty in social, occupational or school functioning. (R. at 777.)

The ALJ concluded that Spangler's opinion lacked support because it was contradicted by other evidence of record, including Spangler's own observations. (R. at 119.) Spangler observed that Hunley's social skills were adequate, and she related well during the examination. (R. at 725.) She was clean, appropriately dressed, cooperative, compliant and forthcoming. (R. at 722, 724.) Hunley had appropriate speech, her thought content was non-psychotic, and she demonstrated logical associations. (R. at 724.) In addition, the state agency psychologists found that Hunley had mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. (R. at 174, 186.) Jennings opined that Hunley was limited to performing simple, unskilled and nonstressful work. (R. at 191.)

Based on this, I find that substantial evidence supports the weighing of the medical and psychological evidence by the ALJ. That being so, I further find that substantial evidence supports the ALJ's finding as to Hunley's mental residual

functional capacity and his finding that she was not disabled. An appropriate order and judgment will be entered.

DATED:     March 13, 2015.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE